*Western District*

## VALLEY BANK AND TRUST COMPANY

v.

## ERNEST T. YATES

(May 16, 1960)

*Present:* Riley, P. J., Hobson and Garvey, JJ.

Case tried to *Sloan, J.,* in the District Court of Springfield.

*Hobson, J.* This is an action of contract to recover a balance of $537.40 and interest alleged to be due on a conditional sale contract covering a 1957 Buick.

*At the trial there was evidence tending to show:*

On or about August 8, 1957 the defendant bought a new 1957 eight cylinder, four door Buick Sedan, Model 43, from Springfield Buick Company under a conditional sale contract for a stated selling price of $4,013.00. As part of this transaction he traded in a 1952 Cadillac, Model 62, for which he re-

ceived a trade-in allowance of $2013.00. There was no cash down payment or other credit to which the defendant was then entitled. A balance of $2000.00 was financed under the conditional sale contract. The original of the contract, duly signed by both Springfield Buick Company as seller and the defendant as buyer, was introduced into evidence. The portion of said contract which describes the trade-in allowance reads as follows:

"(2)   Down payment:
    (a)   Trade in 1952 CAD - 62 $..............
             (Yr., Make & Mod.) (Al.)
    (b)   Cash .............. $ .............. $2013"

Under the terms of the contract the balance of $2000.00 plus an insurance premium of $172.00 and finance charge of $423.60, or a total of $2595.60 was to be paid in thirty-six monthly installments of $72.10 beginning November 15, 1957 at the office of the plaintiff with a right of accelerating maturity in the event of default.

On October 8, 1957 the seller, Springfield Buick Company, assigned to the plaintiff all its right, title and interest in said contract and the plaintiff paid said Springfield Buick Company the balance of $2000.00 and paid the insurance premiums of $172.00. On January 17, 1958 the name of the plaintiff was changed from Union Trust Company of Springfield, Massachusetts, to Valley Bank and Trust Company as the result of a bank merger. The defendant made twelve installment payments due under the conditional sale

contract, or a total of $865.20. The plaintiff accelerated maturity of the contract and re-possessed the automobile on January 20, 1959 at which time the defendant was in default for the November and December of 1958 and January of 1959 payments. At the time of repossession the car had a fair market value of $1250.00. At the time of repossession late charges of $54.00 had become due under the terms of the contract and the plaintiff incurred expenses of $8.00 in repossession. The plaintiff held the automobile from January 20, 1959 until March 2, 1959 during which time the plaintiff attempted in good faith to sell the automobile at private sale for the best possible price, and no attempt to redeem the automobile was made by the defendant. The plaintiff sold the car on March 2, 1959 for $1250.00, leaving unpaid a balance of $537.40 on the contract including late charges of $54.00 and including the total finance charge.

The plaintiff filed five requests for rulings.

Requests 1, 2 and 3 were to the effect that the evidence warranted a finding for the plaintiff, a finding that the plaintiff exercised good faith in conducting the resale, and a finding that the defendant failed to sustain the burden of proof that the plaintiff failed to exercise good faith in conducting the resale.

The Fourth Request read as follows:

"After taking possession of the property, the plaintiff may lawfully ship it to Thompsonville, Connecticut, and place it in storage there, provided it will be able to redeliver it to

the defendant within a reasonable time after he has paid or tendered the full amount due. *Jewett v. Keystone Driller Co.,* 282 Mass. 469."

### The Fifth Request read as follows:

"The defendant is not entitled to a rebate of finance charges, in the absence of prepayment."

The Judge granted all the plaintiff's requests but No. 5, which he denied.

The Judge found for the plaintiff and assessed damages in the sum of $59.80, and made the following finding of special facts:

"On all the evidence and the inferences to be drawn therefrom I find that the defendant gave as a down payment a 1952 Cadillac and the conditional sales contract fails to state the trade-in-allowance therefore I find that the finance charges amount to $423.60 and fees amount to $54, or a total of $477.60 which I have deducted from the balance of $537.40 claimed due."

When the judge found that the conditional sale contract failed to state the trade-in allowance and proceeded to deduct the finance charges, which he found amounted to $423.60 and fees amounting to $54.00, a total of $477.60, from the balance of $537.40 claimed to be due, he was acting under what he believed to be a violation of G. L. c. 255, §12, as it existed on August 8, 1957, the date the contract was entered into.

The portions of the then said Section 12, material to this case, read as follows:

"Said contract shall specifically set forth . . . the following: . . . the down payment; a description of propertty to be traded in, if any, and the trade-in allowance therefor; . . . if such contract does not substantially contain the subject

matter as herein set forth, the vendee shall have a valid defence against the recovery of all finance charges and fees, exclusive of insurance premiums, in any action or proceedings to enforce said contract."

We are of the opinion that the question whether or not the contract on its face violated the requirements of said c. 255, §12, that the trade-in allowance should be set forth therein, is a question of law as well as fact; and that when the judge found that the contract failed to state the trade-in allowance he was also ruling as a matter of law that it failed so to do.

In making this ruling and finding we hold that the judge committed prejudicial error.

From a reading of the cases of *Mogul v. Boston Acceptance Co.,* 328 Mass. 424; *Clark v. A. & J. Transportation Co.,* 330 Mass. 327; *Nickerson v. Zeoli,* 332 Mass. 738, and *Lepere v. Atlantic Corp.,* 337 Mass. 92, it is plain that said c. 255, §12, and following sections were enacted for the purpose of protecting conditional vendees against imposition by conditional venders, and are to be strictly applied. In the *Lepere* case, after stating the above purpose, the court says "However, in the application of section 12 all that is required is that a conditional sale contract contain "substantially . . . the subject matter called for by the section."

The question, then, is does the contract substantially contain a statement of the amount of the trade-in allowance.

First, it is to be noted that said section 12 does not require the amount of the trade-in

allowance to be stated in the contract in any specific or particular words or way or place therein.

The mere fact that the figures representing the trade-in allowance were not placed by the person drafting the contract on the line provided for that purpose, immediately to the right of the description of the car traded in and over the word "allowance", but were placed on the line farthest to the right of the line identified as "(b) Cash" provided for placement of the total sum of the trade-in allowance and cash payment, if any, apparently through mistake or in the belief that the amount of the trade-in allowance was the only down payment and need not be set down in two places, and that the best place to so do was on the line provided for total down payment and would make subtraction from the cash price easier, does not in and of itself require a finding as a matter of law or fact, that there was not a substantial, or in other words, a "real or essential" compliance with the provisions of said Section 12.

In our opinion, it is sufficient if from a reading of the contract as a whole and particularly the provision regarding "down payment" one can understand and know the amount of the trade-in allowance to be credited as a whole or in part of the down payment required to be set forth.

We think that one, with or without knowledge of the terms of the sale of the car as agreed upon, reading the contract in the manner above described, can easily determine

that the figure $2013.00 appearing on the line for the total down payment are indicative of and really state the trade-in allowance.

A reading of the conditional sale contract, a photocopy of which is annexed to the report and made a part thereof, shows that all the requirements of said Section 12, with the possible exception of the statement of the trade-in allowance as found by the judge, were fully complied with. The cash price is stated to be $4013.00; the down payment shows that a 1952 Cadillac, Model 62, was traded in, with nothing filled in on the line provided for the statement of the allowance therefor; that nothing is shown on the line provided for a statement of the cash allowance; that on the line provided for the total down payment appear the figures $2013.00, showing a deferred balance of $2000.00.

It is clear, from the above, that no cash payment was to be or was made. It is true that there is no affirmative statement that any cash was not to be or was not paid. However, under the rule stated in the *Lepere* case, 337 Mass. 92, 95, where, as the evidence stated in the report shows, no cash was to be paid, where this item (cash) does not exist, failure to mention it or to insert the word "none" in any blank referring to this item does not constitute nondisclosure of an item required to be disclosed by said Section 12.

It is also clear that it is not to be presumed that the 1952 Cadillac, Model 62, listed as traded in in the down payment provision of

the contract was to be or was traded in without any allowance being made therefor. It certainly had some value.

It is also clear that the sum of $2013.00 shown as the total down payment did not and could not include any payment of cash, because no cash was shown to have been paid. It must and does follow that said sum of $2013.00 shown as the down payment was the trade-in allowance for the Cadillac traded in, and therefore the sale contract does substantially, or really and essentially, contain a statement of the trade-in allowance.

In view of our opinion that the judge erred in ruling and finding that the conditional sale contract failed to state the trade-in allowance, it is unnecessary for us to determine whether or not the question of the failure of the contract to comply with the statute in question was wholly self-supporting and economically was open to the court in view of the fact that such defence was not pleaded by the defendant.

With reference to the denial by the judge of the plaintiff's fifth request to the effect that the defendant was not entitled to a rebate of finance charges in the absence of prepayment, we feel, that whether the action of the judge was right or wrong, is immaterial, as in our opinion the judge was not ordering or making any finding for a rebate of finance charges, but, on the other hand, was ruling, and finding, that because the contract failed to comply with Section 12, relative to the statement of

the trade-in allowance, the defendant had a valid defence against recovery of all finance charges and fees.

Having found prejudicial error, as above stated, and having before us all of the facts, inasmuch as a correct ruling and finding by the judge in the matter of the failure of the contract to comply with said Section 12 relative to the statement of the trade-in allowance would have resulted in a finding for the plaintiff in the sum of $537.40, judgment should be entered for the plaintiff in that amount. *Fiske v. Boston El. Ry.*, 289 Mass. 598, 601.

Gerald Hagarty of Springfield, for the Plaintiff.
Defendant, Pro Se.